# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KYLE EDWARD VICTOR G.,[1]      )
                                        )

**Plaintiff,**      )
                                        )      **CIVIL ACTION**

**v.**      )
                                        )      **No. 19-2518-JWL**

**ANDREW M. SAUL,**      )
**Commissioner of Social Security,**      )
                                        )

**Defendant.**      )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff filed applications for DIB and SSI on August 24, 2016.  (R. 12, 190-96).
After exhausting administrative remedies before the Social Security Administration
(SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision
pursuant to 42 U.S.C. § 405(g).  Plaintiff claims substantial evidence does not support the
ALJ's residual functional capacity (RFC) assessment and the ALJ failed to resolve the
conflicts between the Dictionary of Occupational Titles (DOT) and the testimony of the
vocational expert (VE).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052
(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he
findings of the Commissioner as to any fact, if supported by substantial evidence, shall be
conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual
findings are supported by substantial evidence in the record and whether he applied the
correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,
White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to
the weight, not the amount, of the evidence.  It requires more than a scintilla, but less
than a preponderance; it is "such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see
also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).
Consequently, to overturn an agency's finding of fact the court "must find that the
evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-
Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  Despite the order of Plaintiff's presentation in his Brief of the errors alleged, the court addresses them in the order they would present when applying the sequential evaluation process.

II.     **Assessment of Plaintiff's RFC**

Plaintiff claims the ALJ recognized Plaintiff is more functionally limited than did the state agency psychological consultants[2] but nonetheless "rejected the only opinion of

---

[2] Plaintiff refers to the "[s]tate agency physicians," however the ALJ accorded "great weight" to the opinions of the state agency medical consultants, physicians Harry Cole, M.D., and Jan Hunter, M.D.  (R. 19).  It was the opinions of the state agency psychological consultants, psychologists Robert Cottone, Ph.D., and Vincent Marziano, Ph.D., with which the ALJ found evidence introduced at the hearing level was

record from a treating physician, that of Dr. Sharif." (Pl. Br. 20). Plaintiff summarizes the opinions of Dr. Sharif, argues that his opinions satisfy the regulatory requirements for a treating source opinion, the ALJ's reasons for discounting his opinions are unsupported, the ALJ did not adequately consider the regulatory factors for weighing medical opinions, and the ALJ should have recontacted Dr. Sharif for additional explanation or clarification of his opinions. Id. at 20-24.

The Commissioner responds that the ALJ properly discounted Dr. Sharif's opinion. (Comm'r Br. 4-7). He argues the ALJ discussed Dr. Sharif's opinion at length and provided reasons supported by the record evidence to discount it. Id. at 4-5. He claims Plaintiff's arguments are without merit and argues the evidence before the ALJ was sufficient to make a disability decision and there was no reason for the ALJ to recontact Dr. Sharif or otherwise further develop the record. Id. at 6. Finally, he suggests Plaintiff's argument merely asks the court to reweigh the evidence and impose its judgment for that of the Commissioner. Id. at 7.

In his Reply Brief Plaintiff reiterates his arguments and argues that the ALJ did not rely on the facts argued by the Commissioner—that Plaintiff was responding well to therapy and medication and his mental status examinations were benign—"and the Court [sic] should reject Defendant's attempt to bolster the ALJ's decision with post hoc rationalization." (Reply 7). He argues that responding well to treatment and improvement in one's condition is not inconsistent with disability, id., and cites record

---

inconsistent. (R. 19). Although Dr. Sharif is a physician—apparently a psychiatrist—Dr. Cottone and Dr. Marziano are state agency psychologists.

evidence which in his view shows that his mental status examinations were not benign. (Reply 8).  He argues that Plaintiff's daily activities are not inconsistent with Dr. Sharif's opinions.  Id. at 9.  Plaintiff argues that despite the Commissioner's contrary arguments the ALJ was required to recontact Dr. Sharif.  Id. at 10, & n.7 (citing Coffel v. Astrue, Civ. A. No. 11-1347-JWL, 2012 WL 4758050 at *3-4 (D. Kan. Oct. 5, 2012), and quoting extensively from that case in n.7).  Finally, Plaintiff argues that Dr. Sharif's opinion of a marked limitation in concentration, persistence, or pace is not inconsistent with his opinion that Plaintiff can manage his own finances because he opined Plaintiff's "symptoms were occasionally (1/3 of an 8-hour workday) severe enough to interfere with attention and concentration needed to perform even simple work tasks," but Plaintiff "would not be managing his own finances 8 hours a day, 5 days a week, [and] he would be able to perform that activity when his attention and concentration were adequate for [] simple work tasks" and "doesn't preclude the sporadic ability to pay his own bills or pay for items he is purchasing."  Id. at 11.

### A.    Standard for Evaluating Medical Opinions

For claims filed before March 17, 2017, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [the claimant's] symptoms, diagnosis and prognosis."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations.  Id. §§ 404.1527(c), 416.927(c); Soc. Sec. Ruling

(SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2019).  A

physician who has treated a patient frequently over an extended period (a treating

source)[3] is expected to have greater insight into the patient's medical condition, and his

opinion is generally entitled to "particular weight."  Doyal v. Barnhart, 331 F.3d 758, 762

(10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating source)]

who only saw the claimant once is not entitled to the sort of deferential treatment

accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d

372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources are generally given

more weight than the opinions of nonexamining sources who have merely reviewed the

medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v.

Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407,

412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier

ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of

the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by

---

[3]The regulations defined three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902 (2016).

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not

inconsistent with the other substantial evidence in [claimant's] case record, [the

Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15

(Supp. 2018) ("Giving Controlling Weight to Treating Source Medical Opinions").

If the treating source opinion is not given controlling weight, the inquiry does not

end.  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  A treating source

opinion is "still entitled to deference and must be weighed using all of the factors

provided in 20 C.F.R. § 404.1527 and 416.927."  Id.  Those factors are:  (1) length of

treatment relationship and frequency of examination; (2) the nature and extent of the

treatment relationship, including the treatment provided and the kind of examination or

testing performed; (3) the degree to which the physician's opinion is supported by

relevant evidence; (4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is

rendered; and (6) other factors brought to the ALJ's attention which tend to support or

contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see

also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v.

Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the

weight he gives the treating source opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ

rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing

so." Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v.

Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### B.      The ALJ's Medical Opinion Evaluations

The ALJ summarized the record medical opinions and explained the weight he

accorded to each and the reasons for that weight.  He accorded great weight to the

opinions of the state agency medical consultants, Dr. Cole and Dr. Hunter, because they

are well explained, supported by the record which they reviewed, and are consistent with

the record as a whole.  (R. 19).  He accorded significant weight to the opinions of the

state agency psychological consultants "to the extent they are consistent with the record

as a whole," and noted that he discounted the psychologists' opinions regarding

Plaintiff's "ability to understand complex tasks and make complex work-related

judgments, interact with others, and adjust adequately to changes in the work setting,"

because "evidence introduced at the hearing level establishes a greater degree of

limitation."  Id.

The ALJ explained that he accorded only partial weight to Dr. Sharif's treating

source opinion:

> Dr. Sharif's opinion is not well explained, and his proposed limitations are
> internally inconsistent—he opines that the claimant has a marked degree of
> limitation in concentrating, persisting, or maintain[ing] pace.  This is not
> consistent with the medical record, including the fact that claimant plays
> video games, has no problem with personal care, does chores, drives, shops
> in stores, can handle savings account, use checkbook or money order, and
> can follow instructions "fairly well" (Ex. 4E/14E).  It is also internally
> inconsistent with his own opinion that the claimant is capable of managing
> his personal finances.  He opines that the claimant has marginal adjustment
> and is likely to be absent from work more than four days per month but has
> only a moderate degree of limitation in adapting or managing oneself (Ex.

3F/3-4).  Furthermore, these proposed limitations are not supported by Dr.
Sharif's treatment records from Wyandot Center for Community
Behavioral Healthcare (Ex. 4F), and they are inconsistent with the
claimant's recent psychotherapy records, which reveal that the claimant
possesses more than a minimal capacity to adapt to changes in the
claimant's environment or to demands that are not already part of the
claimant's daily life (Ex. 14E/4-5; 4F/20-21, 25, 28, 35, 49, 52-53, 58-59).
Further, the claimant also testified that he has 2 roommates that are friends,
uses the Internet for Reddit and Youtube, watches TV, plays video games
3-4 hours a day, drives with some problems, tries to socialize with
roommates, and goes to Walmart 2-3 times a month late at night.
Therefore, Dr. Sharif's opinion is given partial weight to the extent it is
consistent with the record as a whole.

(R. 19-20).

The ALJ accorded only partial weight to the Global Assessment of Functioning

(GAF) score of 60 assigned by Dr. Spence in November 2016 because "evidence

introduced at the hearing level establishes a greater degree of limitation in the claimant's

ability to interact with others."  Id. at 20.

The ALJ assessed Plaintiff with an RFC for a range of work at all exertional levels

limited only by certain non-exertional limitations:

[Plaintiff] is able to understand, remember, and carry out simple, routine,
and repetitive tasks in a work environment with no fast-paced production
requirements and involving only simple work-related instructions and
decisions and with only occasional judgment and workplace changes.  The
claimant can occasionally respond to and have interaction with supervisors
and coworkers, but he can never have interaction with the general public.

(R. 17) (finding no. 5, bold omitted).  The ALJ explained his RFC assessment:

In sum, the above residual functional capacity assessment is supported by
the medical evidence record, statements of the claimant and the opinion
evidence.  Accordingly, based upon the objective evidence, the claimant's
course of treatment, their [sic] level of daily activity and their [sic] work
history, I have determined that the claimant retains the residual functional
capacity for work at all exertional levels.  However, the claimant's anxiety

including social anxiety; depression; PTSD; and cannabis abuse disorder cause moderate difficulties with understanding, remembering, or applying information; concentration, persistence or maintain pace; and adapt and manage oneself that result in limitations, including able to understand, remember, and carry out simple, routine, and repetitive tasks in a work environment with no fast-paced production requirements and involving only simple work-related instructions and decisions and with only occasional judgment and workplace changes. Further, the claimant's severe mental impairments also cause marked difficulties with their [sic] ability to interact with others that result in limitations, including can occasionally respond to and have interaction with supervisors and coworkers, but he can never have interaction with the general public. Weighing all relevant factors, I find that claimant's allegations do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision. There is evidence in the record that the claimant's impairments are not as severe as alleged and do not prevent them [sic] from performing basic work activities. Therefore, I find that there is a lack of evidence in the medical record to support the claimant's alleged inability to perform basic work activities. The residual functional capacity is based on the entire medical record and adjusted to give the claimant the benefit of the doubt with regard to their [sic] allegations of disability.

(R. 21).

## C. Analysis

Although Plaintiff claims the RFC is unsupported by the record evidence, his only argument in this regard is that the ALJ erred in weighing Dr. Sharif's treating source medical opinion. The court finds no error.

Plaintiff is correct both that the ALJ found Plaintiff more limited than did the state agency psychological consultants and that Dr. Sharif's opinions satisfy the regulatory requirements of a treating source opinion. However, neither fact suggests that the ALJ's evaluation of Dr. Sharif's opinion was erroneous.

Moreover, Plaintiff has not shown that the ALJ was required to recontact Dr. Sharif.  First, there is no regulatory requirement that the ALJ recontact Dr. Sharif for clarification or explanation of his opinions.  As quoted above, the ALJ found Dr. Sharif's opinion not well explained; inconsistent internally, inconsistent with Dr. Sharif's treatment records, and inconsistent with the other medical records; and not supported by Dr. Sharif's treatment records.  (R. 19-20).  The regulation to which Plaintiff cites in his Brief explains, "If any of the evidence in your case record, including any medical opinion(s) and prior administrative medical findings, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have."  20 C.F.R. § 404.1520b(b)(1).  That is precisely what the ALJ did in this case, he discounted Dr. Sharif's inconsistent opinion and determined that Plaintiff is not disabled.   Plaintiff's argument that the ALJ should have recontacted Dr. Sharif appears to be based upon one of four alternatives the SSA may do "[i]f the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after considering the evidence we determine we cannot reach a conclusion about whether you are disabled,"—to "recontact [Plaintiff's] medical source."  Id. § 404.1520b(b)(2)(i) (emphases added).  However, subparagraph (b)(2)(i) does not apply here because the evidence is inconsistent and the ALJ determined he could, and did, reach a disability determination.  Moreover, recontacting Dr. Sharif—the alternative upon which Plaintiff relies—is one of four alternatives available to the ALJ to resolve the issue and even if the evidence were consistent and insufficient or the ALJ were unable to reach a conclusion on disability Plaintiff does not explain why this is the alternative the ALJ must choose.

While Plaintiff clearly disagrees with the ALJ's determination, he has not demonstrated that the evidence was insufficient to reach a determination.

In his Reply Brief, Plaintiff takes a different tack, arguing that 20 C.F.R. § 416.912(e)(1) and this court's decision in Coffel require that the ALJ in this case recontact Dr. Sharif.  This court in Coffel was referring to the earlier decision of Palmer v. Barnhart, No. 05-2372-JWL, 2006 WL 1581004 (D. Kan. June 6, 2006), and quoted 20 C.F.R. § 416.912(e)(1) (2006) which spoke of a regulatory "duty to recontact."  The regulations have changed since 2006 and neither 20 C.F.R. §§ 404.1512 and 416.912 nor §§ 404.1520b and 416.920b now impose a "duty to recontact" a treating physician.  Thus, the only question remaining for this court is whether the ALJ properly considered and discounted Dr. Sharif's opinion.

As quoted supra at 9-10, The ALJ explained his bases for discounting Dr. Sharif's opinion.  (R. 19-20).  Plaintiff argues that Dr. Sharif's opinion Plaintiff can manage his own finances is not inconsistent with Dr. Sharif's opinion that Plaintiff has a marked limitation in concentration, persistence, or pace because he opined Plaintiff's symptoms were only occasionally (up to one-third of an 8-hour workday) severe enough to interfere with attention and concentration, and although that fact would preclude competitive work it would not "preclude the sporadic ability to pay his own bills or pay for items he is purchasing."  (Pl. Br. 22).  The regulations define a marked limitation in the four basic mental functional areas (the "paragraph B" criteria of the mental disorder listings): "Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited."  20 C.F.R., Pt. 404, Subpt. P § 12.00F(2)(d).  Dr.

13

Sharif, in his "Mental Impairment Questionnaire," circled the response that Plaintiff has a marked "Degree of Limitation" in the "Functional Limitation" "Concentrate, Persist, or Maintain Pace."  (R. 457).  Understanding the definition of a marked limitation, this evidence supports the ALJ's finding that a marked limitation in concentration, persistence, or maintaining pace is inconsistent with the opinion that Plaintiff is capable of managing personal finances.  Dr. Sharif did not state that the degree of limitation was only <u>occasionally</u> marked.  Plaintiff relies upon Dr. Sharif's checking "Occasionally" when asked how often during a typical workday Plaintiff's pain or other symptoms were "severe enough to interfere with attention and concentration needed to perform even simple work tasks."  (R. 457).  These are two different issues.  While Plaintiff's view might be reasonable, the ALJ's view is also reasonable, and the court must accept the Commissioner's view when it is supported by the evidence.  Moreover, "the sporadic ability to pay [one's] bills or pay for items he is purchasing" (Pl. Br. 22) are but two of the myriad aspects of managing one's personal finances.

Plaintiff's argument that the court should reject the Commissioner's arguments that Plaintiff was responding well to medication and therapy and his mental status examinations were largely benign because these arguments were not the ALJ's rationale and are merely the Commissioner's post hoc rationalizations for the ALJ's decision misunderstands the rule against post hoc rationalization.  As Plaintiff suggests, an ALJ's decision should be evaluated based solely on the reasons stated in his decision. <u>Robinson</u>, 366 F.3d at 1084.  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  <u>Knipe v. Heckler</u>, 755 F.2d 141,

149 n.16 (10th Cir. 1985).  Nor may a reviewing court create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  In its consideration whether there has been post hoc rationalization, the court will first determine the rationale presented in the Commissioner's final decision for the finding at issue.  Buchan v. Astrue, Civ. A. No. 10-4081-JWL, 2011 WL 3714472, *4-5 (D. Kan. Aug. 24, 2011).  If the Commissioner points to record evidence supporting that rationale, even if that evidence was not specifically mentioned in the final decision, that is proper argument in support of the final decision.  However, if the Commissioner points to record evidence (even evidence which was discussed in the decision) and attempts to provide an alternative rationale supporting the decision, that rationale is merely post hoc rationalization which may not be relied upon by the court to affirm the decision.

Here, the ALJ discounted Dr. Sharif's opinion because it was not well explained; inconsistent internally, inconsistent with Dr. Sharif's treatment records, inconsistent with the other medical records; and not supported by the treatment record.  (R. 19-20).  In his Brief, the Commissioner cited Plaintiff's response to therapy and medications and that results of mental status examinations were largely benign to support "the ALJ's observation that Dr. Sharif's opinion was not well explained."  (Comm'r Br. 5).  The Commissioner was not providing an alternative rationale for the ALJ's finding regarding Dr. Sharif's opinion.  Rather, he was citing record evidence supporting the ALJ's rationale that Dr. Sharif's evidence was not well-explained and inconsistent with Dr.

Sharif's treatment records.  Plaintiff has shown no error in the ALJ's evaluation of Dr. Sharif's medical opinion.

### III.   Alleged Conflicts Between VE Testimony and the DOT

Plaintiff argues, "The VE has testified inconsistently with the DOT, … and the ALJ did not resolve the conflicts."  (Pl. Br. 17).  This is so, in his view, for several reasons.  First, because the ALJ's RFC limited Plaintiff "to simple, repetitive, routine work" and to only occasional judgement but the DOT identifies making judgments as a primary part of the laundry worker job and does not identify the laundry worker job as a repetitive job.  Id. at 18.  Second, the RFC limited Plaintiff to occasional workplace changes but the DOT job description of industrial cleaner involves many workplace changes "including going from building to building, cleaning, using handtrucks, burning, cutting grass, shoveling snow, driving an industrial truck, etc."  Id.  Finally, he argues the RFC limited Plaintiff to simple instructions, but all the representative jobs suggested by the VE and relied upon by the ALJ require the ability to carry out detailed instructions. Id. (quoting MacDonald v. Colvin, No. 2:14-CV-02446-JTM, 2016 WL 55270, at *2 (D. Kan. Jan. 5, 2016) (citing Hackett v. Barnhart, 395 F.3d 1168 (10th Cir. 2005))). Plaintiff argues the VE testimony is inconsistent with the DOT and the ALJ did not resolve the conflict, so it was error for the ALJ to rely on the VE testimony.  Id.

The Commissioner argues, "Because the ALJ's hypothetical question to the vocational expert included all of the limitations the ALJ found supported by the record, his reliance on the vocational expert testimony provided substantial evidence to support the step five finding."  (Comm'r Br. 8).  He first addresses Plaintiff's argument that the

RFC limitation to simple instructions precludes reliance on any of the representative jobs because they require the ability to carry out detailed instructions.  He argues that Plaintiff's argument rests upon the DOT's General Educational Development (GED) reasoning levels of which all the representative jobs at issue require a reasoning level of two.  (Comm'r Br. 9).  He points out, however, that the court in <u>Hackett</u> "indicated that level-two reasoning was consistent with 'simple and routine work tasks.'"  <u>Id.</u> at 10 (quoting 395 F.3d at 1176).

Next, the Commissioner addresses the industrial cleaner job pointing out that Plaintiff's argument relies on the DOT job description's requirement of "going from building to building, cleaning, using handtrucks, burning, cutting grass, shoveling snow, driving an industrial truck, etc." to suggest that the job requires more than occasional workplace changes despite the VE's testimony that her testimony was consistent with the DOT.  <u>Id.</u> at 11 (quoting Pl. Br. at 17-18).  He argues these facts show there was no apparent conflict between the VE testimony and the DOT which required resolution.

Finally, the Commissioner addresses Plaintiff's claims that the launder worker job is not classified as repetitive and requires more judgment than that of which the ALJ found Plaintiff capable.  He argues that these conflicts, if indeed they are conflicts, were not so apparent as to require ALJ comment, particularly considering the VE testimony that there was no conflict.

### A.    Requirement to Address Conflicts Between DOT and VE Testimony

As the parties agree, SSR 00-4p is the standard to be applied here:

The Responsibility To Ask About Conflicts

When a VE or VS [(vocational specialist)] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

- Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
- If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Explaining the Resolution

When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 2000 WL 1898704, *4 (SSA Dec. 4, 2000) (cited by Plaintiff as published in

POMS DI 25015.030B). As quoted above, SSR 00-4p places three duties upon the ALJ

before he may rely upon VE testimony. 1. He must ask the VE if the evidence provided

conflicts with the DOT. 2. He must obtain a reasonable explanation for any apparent

conflict. And, 3. he must explain his resolution of the conflict in the decision.

**B.      The ALJ's Findings**

The ALJ explained that because Plaintiff has non-exertional limitations, he called

upon the services of a VE to aid in his application of the Medical-Vocational Guidelines

as a framework for decision-making. (R. 22). He noted that the VE testified that an

individual with the RFC assessed by the ALJ would be able to perform the following

representative jobs in the economy with a medium exertional level and Specific

18

Vocational Preparation level of 2 (SVP-2):  industrial cleaner, with approximately 67,700 jobs in the national economy; laundry worker, with approximately 97,500 jobs in the national economy; and tumbler operator, with approximately 87,500 jobs in the national economy.  (R. 22).  The following colloquy occurred between the ALJ and the VE at the hearing:

> Q   Is the evidence and testimony you provided today consistent with the Dictionary of Occupational Titles?
>
> A   Yes, testimony has been consistent.  Additionally, I did supplement testimony with my work experience in regard to the limitations involving fast-paced production requirements; contact with supervisors, coworkers, the public; and being off-task, as all that information is absent from the DOT and the SCO [(Selected Characteristics of Occupations)].

Id. at 53.

The ALJ explained his analysis in his decision:

> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. However, the vocational expert further testified that with regard to restrictions posed in the hypothetical questions that are not addressed in either the DOT or the SCO, they [sic] supplemented their [sic] testimony and relied on their [sic] experience in the vocational field, education and/or training for the basis of their [sic] testimony.  The vocational expert's testimony is based upon their [sic] professional knowledge, training and/or experience (Exhibit 20E), to which the claimant and their [sic] representative had no objection.  Therefore, the vocational expert's testimony is accepted and relied upon, in accordance with SSR 00-4p.
>
> Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

Id. at 22-23.

19

### C.   Analysis

The court finds no error in the ALJ's analysis because Plaintiff has shown no

apparent conflict between the information supplied by the VE and the DOT.   Here, the

ALJ did exactly as SSR 00-4p required him to do.  He asked the VE if the evidence she

provided conflicts with the DOT, he obtained a reasonable explanation and he explained

in the decision that he accepted the VE's experience, education, and training as a

reasonable basis to accept her testimony where the DOT and the SCO do not cover every

aspect of the jobs.  (R. 22-23).

A VE or other VS is used in Social Security disability cases to provide vocational

information and explain the vocational aspects of Social Security regulations and

procedures in evaluating a claimant's (actually, a hypothetical individual with the RFC

assessed by the ALJ and with the age, education, and work experience of the claimant)

ability to perform work in the economy.  The ALJ questioned the VE and determined that

her professional qualifications are as stated in Exhibit 20E; that she is familiar with the

SSA's regulations defining the vocational terms sedentary, light, medium, heavy, very

heavy, unskilled. semi-skilled, and skilled; that she is familiar with jobs that exist in the

national economy; and that she was to explain any opinion she provided which conflicted

with information in the DOT.  Id. at 50-51.  Plaintiff's attorney stated that she had no

objection to the VE's qualifications to testify.  Id. at 51.

Plaintiff, Plaintiff's attorney, the ALJ, and this court are not experts qualified in

vocational matters.  Yet, Plaintiff argues, without a basis in the record evidence in this

case and despite the VE's testimony to the contrary, that the VE's testimony conflicts

with information in the DOT, and that the ALJ should have seen the conflict and should have addressed it.  SSR 00-4p requires the ALJ to address apparent conflicts, not <u>all</u> conflicts.  Plaintiff bases her allegations of conflict on her understanding of the DOT and the terms used therein and on case law from the Tenth Circuit and the District of Kansas. The court now addresses Plaintiff's arguments in light of this background discussion.

Plaintiff first argues the job of laundry worker requires a variety of duties whereas the RFC limits Plaintiff to "simple, repetitive, routine work," and "making judgments is a primary tolerance of the job," whereas the RFC limits him to occasional judgment.  (Pl. Br. 17).  The DOT confirms that the job requires "Performing a VARIETY of duties," and "Making JUDGMENTS and decisions," but it does not indicate that making judgments is a <u>primary tolerance</u> of the job.  DICOT 361.684-014, 1991 WL 672983. Moreover, the RFC assessed by the ALJ provided that Plaintiff "is able to understand, remember, and carry out simple, routine, and <u>repetitive tasks</u> in a work environment with no fast-paced production requirements and involving only simple work-related instructions and decisions and with only <u>occasional judgment</u> and workplace changes." (R. 17) (emphases added).  Plaintiff does not explain how the fact the laundry worker job involves a variety of duties is a more demanding requirement than the ability "to understand, remember, and carry out simple, routine, and <u>repetitive tasks</u>," or how performance of a variety of duties cannot be accomplished through simple, routine, and repetitive tasks.  He does not explain how the requirement to make judgments and decisions is precluded by the limitation to making only occasional judgments.  The VE is the expert in vocational matters, familiar with jobs in the national economy, and Plaintiff

had no objection to her qualifications, and she testified the job of laundry worker could be performed within the RFC assessed by the ALJ.  Plaintiff has shown no conflict, much less an apparent conflict between the VE testimony and the DOT.

Plaintiff's claim, that the job of industrial cleaner requires more than occasional workplace changes, leads to the same result.  Plaintiff quotes the body of the occupational definition for the job of industrial cleaner and argues that this definition demonstrates the "many workplace changes involved, … including going from building to building, cleaning, using handtrucks, burning, cutting grass, shoveling snow, driving an industrial truck, etc.," and cannot be met within the RFC limitation to occasional workplace changes.  (Pl. Br. 17-18).  Plaintiff relies on the "task element statements" and many of the "'May' items" in the Body of the Definition to suggest that the job involves many workplace changes.  Plaintiff's argument misunderstands the occupational definition. The task element statements "indicate the specific tasks the worker performs to accomplish the overall job purpose," and the "'May' Items" "describe duties required of workers in this occupation in some establishments but not in others.  The word 'May' does not indicate that a worker will sometimes perform this task but rather that some workers in different establishments generally perform one of the varied tasks listed." DOT, Parts of the Occupational Definition, available online at https://occupational info.org/front_223.html (last visited July 13, 2020).  Thus, the occupational definition lists the tasks potentially required in the myriad of jobs covered by that definition, and therefore reflects many workplaces.  However, the group of tasks required of any one job within the occupation constitute the tasks required of that workplace.  Therefore, the

workplace where that group of tasks is performed, even if it involves work in several buildings, is one workplace and movement around that workplace is not considered a change in the workplace.  "Workplace changes" are concerned with <u>stability</u> in the workplace as a whole, not moving around within the workplace or the fact that a job requires multiple tasks for its accomplishment.  The VE testified the job of industrial cleaner could be performed within the RFC assessed by the ALJ—requiring only occasional workplace changes.  Once again, Plaintiff has shown no conflict, much less an apparent conflict between the VE testimony and the DOT.

Plaintiff's argument that the RFC limitation to simple instructions is inconsistent with the DOT does not produce a different result.  Plaintiff argues he is limited to simple instructions but each of the representative jobs provided by the VE and relied upon by the ALJ requires the ability to carry out detailed instructions.  (Pl. Br. 18).  The RFC assessed does not merely limit Plaintiff to simple instructions as Plaintiff argues, but as quoted above finds Plaintiff "is able to understand, remember, and carry out simple, routine, and repetitive tasks in a work environment with no fast-paced production requirements and <u>involving only simple work-related instructions and decisions</u> and with only occasional judgment and workplace changes."  (R. 17) (emphasis added).  And, as Plaintiff suggests and the Commissioner argues, each of the representative jobs relied upon have a reasoning development level of two, requiring the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations."  DOT, App'x C, III, <u>available online at</u> <u>https://occupationalinfo.org/app</u>

endxc_1.html  (last visited July 13, 2020).  Plaintiff does not explain how he reached the

conclusion that the ability to understand, remember, and carry out simple, routine, and

repetitive tasks "involving only simple work-related instructions" conflicts with the

ability to apply commonsense understanding to carry out detailed but uninvolved written

or oral instructions.  Other than the two cases he cites, the conclusion appears to be based

on the use of the adjective "simple," among others, to describe instructions in the RFC

and the use of the adjective "detailed," among others, to describe instructions in the

reasoning level of each of the representative jobs.  However, the two cases cited by

Plaintiff do not apply here, and reasoning level in a DOT job description relates to

educational development rather than the ability to understand, remember, and carry out

instructions.

In support of her argument, Plaintiff cited MacDonald, 2016 WL 55270 at *2.  (Pl.

Br. 18).  However, MacDonald is a decision of a district court in this district and is not

binding on this court.  Moreover, the court does not find it persuasive.  In MacDonald,

the representative jobs included both reasoning level two and three.  Id. at *1-2.  Here,

the representative jobs are all reasoning level two.  The court in MacDonald relied on

Hackett, 395 F.3d at 1176, noting that the Hackett court "found an apparent conflict

between an RFC limitation to 'simple and routine work tasks' and a job requiring a

reasoning developmental level of 3."  Id. 2016 WL 55270 at *2.  Hackett, is a published

opinion of the Tenth Circuit and is therefore precedent binding on this court.  But as the

MacDonald court recognized, Hackett was a decision involving a reasoning development

level of three.  This court has recognized Hackett's finding of an apparent conflict

between the "inability to perform more than simple and repetitive tasks and the level-three reasoning," 395 F.3d at 1176, and has remanded in such cases. E.g., Carolyn J. S. v. Saul, No. 18-4049-JWL, 2019 WL 2523575, at *3 (D. Kan. June 19, 2019). However, this court has repeatedly and consistently recognized that the facts of Hackett do not apply in cases dealing with jobs involving level-two reasoning. I.e. Suzanne I. v. Saul, No. CV 19-1213-JWL, 2020 WL 2747184, at *5 (D. Kan. May 27, 2020); Kathleen B. v. Saul, No. CV 19-1219-JWL, 2020 WL 3076598, at *7 (D. Kan. June 10, 2020); Lesley A. H. v. Saul, No. CV 19-2509-JWL, 2020 WL 3545626, at *15 (D. Kan. June 30, 2020).

This court's rationale has been consistent throughout. Plaintiff's argument that the ability to understand, remember, and carry out simple, routine, and repetitive tasks involving only simple work-related instructions conflicts with the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions rests on the assumption that "the ability to understand, remember, and carry out simple … instructions" in an RFC can never be sufficient ability "to carry out detailed … instructions" within the meaning of GED reasoning development level 2. But Plaintiff presents no appropriate authority for his assumption. The DOT explains that

> General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study.
>
> The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development.

(DOT, App'x C, Pt. III) available at:  https://occupationalinfo.org/appendxc_1.html#III
(last visited July 13, 2020).

Thus, GED deals with the amount of education (formal or informal) an occupation requires, "reasoning development" is one of three divisions of educational development, and "02 level reasoning development" is the second least demanding of 6 reasoning development levels.  While it might be reasonable for a layman, an attorney, or a court to conclude from the DOT definition of 02 level reasoning development that the educational development necessary "to carry out detailed but uninvolved written or oral instructions" is greater than the mental abilities "to understand, remember, and carry out simple, routine, and repetitive tasks in a work environment with no fast-paced production requirements and involving only simple work-related instructions," which the ALJ found, Plaintiff cites no authority requiring it.  Reasoning level in the DOT relates to the educational background a particular occupation requires whereas mental abilities in a Mental Residual Functional Capacity Assessment represent 20 mental functional abilities grouped in 4 categories—Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaptation.  POMS DI 24510.060(B)(2).  The ability to understand and remember instructions and the ability to carry out instructions fall within the categories of Understanding and Memory, and of Sustained Concentration and Persistence, respectively.  (R. 62, 74, 89, 102); see also POMS DI 24510.060(B)(2).  While educational requirements and mental abilities intuitively appear to be related, Plaintiff has shown no direct correlation and the VE stated that an individual with the Mental RFC assessed by the ALJ would be able to perform the representative jobs relied

upon by the ALJ and testified that her testimony was consistent with the DOT.  (R. 53).

Plaintiff may not create a conflict based upon her or her attorney's lay reading of the

DOT in opposition to a vocational expert, and the court may not impose its lay view of

the vocational evidence over that of the VE nor its evaluation of the evidence over that of

the ALJ.  "The possibility of drawing two inconsistent conclusions from the evidence

does not prevent an administrative agency's findings from being supported by substantial

evidence.  We may not displace the agency's choice between two fairly conflicting

views, even though the court would justifiably have made a different choice had the

matter been before it de novo."  Lax v. Astrue, 489 F.3d at 1084 (citations, quotations,

and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620

(1966).  Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated July 13, 2020, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**

27